+IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:18-CV-00070-GCM

| ROSA GIL | ) | |
| DANTE GIL | | |
| ADA ARGUETA, | | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| LEANDER HOLSTON | ) | |
| KIRSTJEN NIELSEN | | |
| FRANCIS CISSNA, | | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER COMES** before this Court on both Plaintiffs' and Defendants' separate Motions for Reconsideration (Docs. No. 23, 25) of the Court's April 2, 2019 Order. (Doc. No. 19). On May 1, 2019, the Court entered an Order staying the April 2 Order pending resolution of the instant Motions for Reconsideration. Due to misapprehension in issuing the original Order, the Court will **GRANT IN PART** and **DENY IN PART** the pending Motions for Reconsideration. The Court **WITHDRAWS** the Order issued on April 2, 2019 (Doc. No. 19) and enters the following Order in its place.

I.  **FACTUAL BACKGROUND**

The facts in this matter are undisputed. Plaintiff Dante Gil is the biological father of Plaintiff Ada Argueta. Plaintiff Rosa Gil is the ex-spouse of Plaintiff Dante Gil. All three Plaintiffs are citizens of the Dominican Republic. Dante and Rosa Gil entered the United States at San Juan, Puerto Rico, on March 10, 1999, on Temporary Nonimmigrant Religious Worker visas with authorization to remain in the United States until November 12, 1999. On November

1

8, 1999, Dante Gil's father filed a Form I-130, Petition for Alien Relative, on Gil's behalf, seeking to classify him as a 3rd preference married son of a U.S. citizen.

On December 19, 2003, at the age of 14, Ada Argueta entered the United States on a B-2 visitor's visa, with authorization to remain in the United States until June 16, 2004. On May 25, 2005, the United States Citizenship and Immigration Services ("USCIS") approved the 3rd preference I-130 petition filed on Dante Gil's behalf. On December 2, 2007, all three Plaintiffs filed Form I-485, Application to Register Permanent Residence or Adjust Status, pursuant to INA § 245(a). Each application indicated that the applicant had overstayed their prior visa. All three Plaintiffs were represented at the time by an immigration attorney. On September 23, 2008, USCIS approved all three I-485 applications.

Each Plaintiff filed an N-400, Application for Naturalization, pursuant to the Immigration and Nationality Act (INA) § 316, 8 U.S.C. § 1427 (Ada Argueta on November 13, 2013, Rosa Gil on December 9, 2013, and Dante Gil on January 1, 2014). USCIS denied each N-400 application (Rosa Gil on March 17, 2014, Ada Argueta on March 21, 2014, Dante Gil on April 24, 2014) on the basis that Plaintiffs were not lawfully admitted for permanent residence as required by INA § 318, 8 U.S.C. § 1429, because each Plaintiff adjusted status under INA § 245(a), when in fact they were each ineligible to adjust status under that section of law due to their prior failure to maintain lawful immigration status in the United States since their entries. INA § 245(c); 8 U.S.C. § 1255(c). Plaintiffs did not pay the required fee under INA § 245(i) nor did they submit Supplement A.

Despite being required by 8 C.F.R. § 245.10(d) to provide Plaintiffs with notice of the deficiency in their applications, Defendants never provided any notice that Plaintiffs'

applications for adjustment of status were deficient. Rather, Defendants erroneously approved the applications.

All three Plaintiffs filed a Form N-336, Request for a Hearing on a Decision in Naturalization Proceedings (Rosa Gil and Ada Argueta on April 10, 2014, Dante Gil on May 9, 2014). Plaintiffs each appeared for a hearing on November 10, 2014, and on December 4, 2017, USCIS issued decisions affirming the denials of the N-400 applications. This Court held a de novo hearing in this matter on April 2, 2019. Subsequently, the Court entered an Order in the matter. The Parties each filed Motions for Reconsideration of that Order. The Court will discuss the Motions below.

## II.     MOTION FOR RECONSIDERATION

A district court may reconsider a final order for a number of reasons, including mistake, inadvertence, or any reason that justifies such relief. Fed. R. Civ. P. 60(b). The court should reconsider an order if, for example, "the Court has patently misunderstood a party, … or has made an error not of reasoning but of apprehension." *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc*, 99 F.R.D. 99, 101 (E.D.VA. 1983). Motions to reconsider are not appropriate to ask the Court to rethink what the Court had already thought through-rightly or wrongly. *Id.*

In the April 2, 2019 Order, the Court operated off the mistaken understanding that if Plaintiffs were allowed to refile for lawful permanent resident status ("LPR status") under 8 U.S.C. §1255(i), Plaintiffs would be eligible for naturalization after the running of the appropriate statutory waiting period. However, for the reasons stated in the Motions to Reconsider, it is now apparent to the Court that the April 2 Order would not accomplish the Court's intent. Due to this misapprehension, the Court withdraws that Order. The Court enters the following Order in its place.

3

## III. ORDER ON NATURALIZATION

"Courts review a decision denying a naturalization application de novo." *Injeti v. U.S. Citizenship & Immigration Servs.*, 737 F.3d 311, 315 (4th Cir. 2013).; *see* 8 U.S.C. § 1421(c). To qualify for naturalization, an applicant bears the burden of establishing, among other prerequisites, that she has resided continuously in the United States for at least five years after being "lawfully admitted for permanent residence." 8 U.S.C. §1427(a).

"The term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws." 8 U.S.C. § 1101(a)(20). The Fourth Circuit has adopted the definition of "lawfully" as denoting "compliance with substantive legal requirements, not mere procedural regularity." *Injeti*, 737 F.3d at 315. "Even in cases where there is no indication of fraud, an alien has not been lawfully admitted if her admission, at the time it was granted, was not in substantive compliance with the immigration laws." *Id.* at 316 (internal quotations omitted). The Fourth Circuit cited approvingly of a case from the Eighth Circuit where the Court found "that petitioner had not been lawfully admitted because his LPR status 'was obtained by a negligent mistake made by the government.'" *Id.* at 316 (citing *Arellano-Garcia v. Gonzales*, 429 F.3d 1183 (8th Cir. 2005).

Following the above definition of lawfully admitted, it is clear on these facts that Plaintiffs were not lawfully admitted when USCIS granted their LPR status. Plaintiffs each applied for LPR status under Section 1255(a) which the government granted. Plaintiffs, however, were not eligible for LPR status under that Section because they had each overstayed their original visas. Thus, when their LPR status was obtained, they were not in substantive compliance with all applicable immigration laws.

The Court finds that Plaintiffs were not lawfully admitted as defined in Fourth Circuit law when they obtained their LPR status. Due to that ruling, the Court concludes that Plaintiffs are ineligible at this time for naturalization under 8 U.S.C. §1427(a).

## IV. *NUNC PRO TUNC* RELIEF

While the Plaintiffs are currently ineligible for naturalization, that does not end the analysis in this matter. According to the Defendants' arguments throughout this proceeding, the *government's* mistake and the *immigration attorney's* mistake leaves these Plaintiffs with zero hope of a future as naturalized American citizens. Defendants argue that this Court should not intervene in any way to rectify the Agency's mistake. This Court refuses to serve in the role of Pontius Pilate and simply wash its hands of this matter. Rather, Plaintiffs identified the proper route to achieve the Court's original intent. The route provides the equitable result without doing violence to either the Constitution or the United States Code. That route is *nunc pro tunc* relief.

*Nunc pro tunc* translates from Latin to English as "now for then." In the context of immigration, *nunc pro tunc* relief has been used "to return aliens to the position in which they would have been, but for a significant error in their immigration proceedings." *Edwards v. INS*, 393 F.3d 299, 309 (2d Cir. 2007) (citing *Batanic v. INS*, 12 F.3d 662, 667 (7th Cir. 1993)); *Castillo-Perez v. INS*, 212 F.3d 518, 528 (9th Cir. 2000). The use of *nunc pro tunc* relief dates back to before the enactment of the INA, but its use also survived the enactment of the INA. *See id.* (discussing *nunc pro tunc* relief after the enactment of the INA); *see also In Re Garcia-Linares*, 21 I. & N. Dec. 254, 257 (BIA 1996) ("And, in 1954, the Attorney General ruled that there was no reason to reverse this practice following the enactment of the 1952 Act."). *Nunc pro tunc* relief, however, is only appropriate if the grant would "effect a complete disposition of the case, i.e., where the only ground of deportability or inadmissibility would thereby be eliminated or where

5

the alien would receive a grant of adjustment of status in conjunction with the grant of any appropriate waivers of inadmissibility." *In Re Garcia-Linares*, 21 I. & N. Dec. at 257. (internal quotations omitted).

Thus, the first issue before this Court is whether *nunc pro tunc* relief would cause a complete disposition of this case. The Court finds that it would. The only reason cited by Defendants for Plaintiffs' failure to be lawfully admitted is Plaintiffs' failure to provide the correct form and statutory sum pursuant to 8 U.S.C. § 1255(i). Therefore, if the Court ordered Defendants to accept the statutory sum and supplementary application *nunc pro tunc*, Plaintiffs could seek to reapply for naturalization serving as a complete disposition of this case. Therefore, the Court finds this case is a case in which *nunc pro tunc* relief is appropriate.

Defendants argue that *nunc pro tunc* relief is inappropriate in this case because "[t]he courts and USCIS have never allowed eligibility criteria for naturalization to be satisfied by the application of equitable remedies . . . Instead, the naturalization process has demanded strict compliance with the congressionally mandated eligibility requirements." (Doc. No. 29, p. 3). This argument is without merit. The Court is not providing equitable relief in the form of altering the requirements for naturalization. The Court is not substituting its decision for that of Congress on the topic of who should or should not be a United States citizen. Rather, the Court is rectifying an otherwise irreparable agency error. *See Edward v. I.N.S.*, 393 F.3d 299, 310 (2d Cir. 2004) ("Applying this framework, courts have concluded that—where an agency error would otherwise be irremediable, and where the plaintiff has been deprived of a significant benefit—fairness to the parties. . . dictates that the error be remedied *nunc pro tunc*.") (internal quotations and citations omitted).

Therefore, the application of *nunc pro tunc* relief in this matter does no violence to either the United States Constitution or the United States Code. The Court will **ORDER** the following relief *nunc pro tunc*:

- Plaintiffs are **ORDERED** to file within the next sixty (60) days the supplemental form and statutory sum required under 8 U.S.C. § 1255(i);
- Defendants are **ORDERED** to accept the supplemental form and statutory sum *nunc pro tunc*;
- Once accepted by Defendants, Plaintiffs may seek to reapply for naturalization.

**V. CONCLUSION**

For the aforementioned reasons, Plaintiffs' and Defendants' Motions to Reconsider are **GRANTED IN PART** and **DENIED IN PART**. The Court **WITHDRAWS** the Order announced in open court and memorialized on April 2, 2019 and enters the above Order. Plaintiffs shall have sixty (60) days in which to file the appropriate form and statutory sum. Defendants are **ORDERED** to accept the sum and form *nunc pro tunc*. Once accepted, Plaintiffs may seek to reapply for naturalization.

**SO ORDERED**.

Signed: August 23, 2019

Graham C. Mullen
United States District Judge